IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD R. BARTO,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 12-569<br><br>Chief Judge Gary L. Lancaster<br>Magistrate Judge Maureen P. Kelly |

## REPORT AND RECOMMENDATION

**I.   INTRODUCTION**

Plaintiff Donald R. Barto ("Barto") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f].[2] The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 12 & 17). For the reasons that follow, it is respectfully recommended that Barto's motion for summary judgment (ECF No. 12) be denied, and that the Commissioner's motion for summary judgment (ECF No. 17) be granted. It is further recommended that the Commissioner's decision denying Barto's application be affirmed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue. Social Security History-Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (as visited on February 27, 2013). Consequently, Acting Commissioner Colvin is now the official-capacity defendant in this action. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); FED. R. CIV. P. 25(d).

[2] Barto also filed an application for disability insurance benefits under Title II of the Act [42 U.S.C. §§ 401-433]. That application was denied because Barto had not worked long enough to satisfy Title II's insured-status requirement. (R. at 70-72); 42 U.S.C. § 423(c)(1). Only his application for SSI benefits is presently at issue.

1

## II.   PROCEDURAL HISTORY

Barto protectively applied for both disability insurance benefits and SSI benefits on July 20, 2009, alleging that he had become "disabled" on August 21, 2007. (R. at 14, 127). Pennsylvania's Bureau of Disability Determination ("Bureau") denied the application for disability insurance benefits on August 15, 2009. (R. at 70-72). The denial was grounded in the fact that Barto was not insured for benefits under Title II of the Act.[3] (R. at 70-72). On December 9, 2009, the Bureau denied Barto's application for SSI benefits. (R. at 73-77). Barto responded on January 8, 2010, by filing a timely request for an administrative hearing. (R. at 78-80).

On February 2, 2011, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") Paula Fow. (R. at 30). Barto, who was represented by counsel, appeared and testified at the hearing. (R. at 33-54). Dr. William Houston Reed, an impartial vocational expert, also testified at the hearing. (R. at 54-60). In a decision dated February 14, 2011, the ALJ determined that Barto was not "disabled" within the meaning of the Act. (R. at 11-25).

On March 17, 2011, Barto sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 7-10). The Appeals Council denied the request for review on March 5, 2012. (R. at 1). Barto commenced this action on April 30, 2012, seeking judicial review of the Commissioner's decision. (ECF Nos. 1 & 3). Barto and the Commissioner filed motions for summary judgment on October 11, 2012, and December 13, 2012, respectively. (ECF Nos. 12 & 17). These motions are the subject of this Report and Recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

---

[3] The formula for determining whether a claimant is insured for benefits under Title II is codified at 42 U.S.C. § 423(c)(1).

**III.     STANDARD OF REVIEW**

This Court's review is plenary with respect to all questions of law. Schaudeck v. Commissioner of Social Security Administration, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental

impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. Stewart v. Secretary of Health, Education & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. Weir on Behalf of Weir v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether

4

the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. McCrea v. Commissioner of Social Security, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

Chenery Corp., 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. Cefalu v. Barnhart, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**IV.     THE DECISION OF THE ALJ**

In her decision, the ALJ determined that Barto had not engaged in substantial gainful activity subsequent to the date of his application. (R. at 16). Barto was found to be suffering from degenerative disc disease of the lumbar spine with radiculopathy, lumbar neuritis, meralgia paresthetica, a depressive disorder, and obesity. (R. at 16). These impairments were deemed to

5

be "severe" under the Commissioner's regulations. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Barto's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-18).

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Barto's "residual functional capacity"[4] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that he is limited to occupations that require no more than occasional postural maneuvers such as balancing, stooping, kneeling, crouching, crawling, and climbing; he is limited to occupations that require no more than occasional pushing or pulling with the upper extremities; and is limited to occupations that involve only simple work related decisions and relatively few workplace changes, and which require no more than occasional interaction with supervisors, coworkers, and members of the public.

(R. at 18). Barto had "past relevant work"[5] experience as a roofer and laborer. (R. at 24, 56). Dr. Reed classified those positions as "unskilled"[6] jobs at the "medium"[7] to "heavy"[8] levels of

---

[4] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Hartranft v. Apfel, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).
[5] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.
[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).
[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[8] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

exertion. (R. at 56). Since Barto was deemed to be capable of performing only "sedentary"[9] work, it was determined that he could not return to his past relevant work. (R. at 24).

Barto was born on July 27, 1961, making him forty-seven years old on the date of his application and forty-nine years old on the date of the ALJ's decision. (R. at 24, 33, 60-61, 127). He was classified as a "younger person" under the Commissioner's regulations.[10] 20 C.F.R. § 416.963(c). He had the equivalent of a high school education[11] and an ability to communicate in English. (R. at 24, 33, 140, 146); 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Barto could work as a surveillance system monitor, call-out operator or lens inserter. (R. at 24-25). Dr. Reed's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[12] (R. at 58-59).

## V. DISCUSSION

Barto worked as a roofer and laborer between 1989 and 2002. (R. at 142, 148). His work history was sporadic and inconsistent. (R. at 35-36). At the hearing, Barto testified that he had suffered from seven blot clots during the 1990's, and that he had been hospitalized several times. (R. at 36). He apparently stopped working on June 15, 2002, because of pain in his back. (R. at 141). Barto's claim for disability insurance benefits was denied by the Bureau because he had

---

[9] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).
[10] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).
[11] Barto obtained his General Educational Development ("GED") certification in 1979. (R. at 33, 146).
[12] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." Boone v. Barnhart, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).

not worked long enough to satisfy Title II's insured-status requirement. (R. at 70-72). Only his application for SSI benefits is presently at issue.

During the period of time relevant to this case, Dr. Robert Grieco was Barto's primary care physician. (R. at 39). In a statement submitted to Pennsylvania's Department of Public Welfare on May 9, 2006, Dr. Grieco declared that Barto was "permanently disabled." (R. at 324-325). Barto's alleged "disability" was attributed to "chronic back pain" and "major depressive disorder." (R. at 325).

Barto visited Dr. Grieco on June 5, 2009. (R. at 276, 383). He complained of chronic pain in his back and depression stemming from the passing of his mother. (R. at 276, 383). Dr. Grieco noted that Barto had exhibited tenderness in his lower back during the examination. (R. at 276, 383). On August 7, 2009, Barto described pain in his lower back that was radiating into his left leg. (R. at 273, 382). He was given a prescription for Flexeril to alleviate his symptoms. (R. at 273, 382). Dr. Grieco determined that a magnetic resonance imaging ("MRI") scan "would not be helpful," because Barto had expressed an unwillingness to undergo surgery. (R. at 273, 382).

On October 12, 2009, at the request of the Bureau, Dr. T. David Newman performed a psychological evaluation of Barto in connection with his application for SSI benefits. (R. at 281-285). After completing the evaluation, Dr. Newman reported that Barto was "moderately" limited in his ability to interact appropriately with supervisors, co-workers, and members of the general public. (R. at 283). Dr. Newman further indicated that Barto's impairments had no effect on his abilities to understand, remember and carry out instructions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. (R. at 283).

8

Dr. Grant W. Croyle, a Bureau psychologist who reviewed Barto's file, opined on October 16, 2009, that Barto was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." (R. at 299). In the narrative portion of his consultative report, Dr. Croyle stated as follows:

> The claimant's basic memory processes are intact. He is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. He is capable of asking simple questions and accepting instruction. He is able to maintain socially acceptable behavior. Moreover, he can sustain an ordinary routine and adapt to routine changes without special supervision. Review of the medical evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks. There are no restrictions in his abilities in regards to understanding and memory, sustaining concentration and persistence and adaptation.

(R. at 299). Dr. Croyle viewed Barto's subjective complaints to be only "partially credible." (R. at 299).

At the request of the Bureau, Dr. Daniel G. Christo conducted a physical examination of Barto on December 1, 2009. (R. at 286-294). Based on the findings of his examination, Dr. Christo reported that Barto could frequently lift or carry objects weighing up to twenty pounds and occasionally lift or carry objects weighing up to twenty-five pounds. (R. at 294). These perceived lifting and carrying abilities exceeded the level of those required of individuals performing "light"[13] work. 20 C.F.R. § 416.967(b). Dr. Christo found Barto's standing, walking, sitting, pushing and pulling abilities to be unlimited. (R. at 294). Although Barto was deemed to be capable of performing only "occasional" postural maneuvers, no environmental restrictions were identified. (R. at 293). Lorraine Proch ("Proch"), a non-examining medical

---

[13] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

9

consultant, opined on December 8, 2009, that Barto was physically capable of performing an unlimited range of "light" work activities. (R. at 64-69).

An x-ray of Barto's left shoulder performed on March 10, 2010, yielded normal results. (R. at 379). On June 8, 2010, Dr. Marc J. Adelsheimer administered an epidural steroid injection to Barto's back in order to decrease his pain. (R. at 374). It was noted that he was suffering from spinal stenosis with radiculitis. (R. at 374). Barto's lumbar spine was x-rayed on December 2, 2010. (R. at 373, 402). Although some "[m]ild hypertrophic spurring" was detected, Barto's "vertebral bodies were intact," his lordotic curve was normal, and "no evidence of instability" was found. (R. at 373, 402).

Barto sought mental health treatment from Dr. Novzna Tazi, a psychiatrist, and Anthony Kofalt ("Kofalt"), a mental health therapist. In medical assessments signed on January 19, 2011, Dr. Tazi and Kofalt both stated that Barto could not complete a normal workday or workweek. (R. at 405, 408). Dr. Tazi opined that Barto had "poor" abilities to relate to co-workers, deal with members of the general public, use judgment, deal with work-related stress, function independently, behave in an emotionally stable manner, relate predictably in social situations, and understand, remember and carry out complex job instructions. (R. at 406-407). Kofalt's assessment of Barto's mental abilities was even more restrictive than that supplied by Dr. Tazi. According to Kofalt, Barto was absolutely precluded from dealing with members of the general public. (R. at 403). In addition, Kofalt asserted that Barto had "poor" abilities to follow work rules, maintain attention and concentration, and understand, remember and carry out both detailed and simple job instructions. (R. at 403-404).

On January 20, 2011, Dr. Grieco submitted a medical statement detailing Barto's alleged physical limitations. (R. at 409-412). Dr. Grieco reported that Barto could stand or walk for

only two hours during the course of an eight-hour workday, and that he needed to alternate between sitting and standing at intervals not exceeding thirty minutes. (R. at 410). Barto was deemed to be capable of lifting objects weighing ten pounds or more on only an occasional basis. (R. at 410). Dr. Grieco asserted that Barto occasionally needed to elevate his legs, and that he was absolutely precluded from engaging in postural maneuvers. (R. at 410-411). Additional limitations were identified with respect to Barto's pushing, pulling and handling abilities. (R. at 411).

At the hearing before the ALJ, Barto testified that he had experienced back pain since falling from a roof at the age of sixteen. (R. at 48). He stated that he could not lift more than five pounds, and that he could not sit for more than thirty minutes without standing or moving around. (R. at 38). The ALJ pointed out that the record contained no objective evidence of a severe back impairment. (R. at 41-42). In response to that observation, Barto's counsel explained that Barto's unwillingness to consider surgery had deterred his treating physicians from ordering an MRI scan.[14] (R. at 42). That explanation was consistent with the treatment note discussing Barto's August 7, 2009, appointment with Dr. Grieco. (R. at 273, 382). When asked about the medical statement prepared by Dr. Grieco, Barto denied that he needed to elevate his legs. (R. at 45).

The ALJ accorded "great weight" to the opinions expressed by Dr. Newman, Dr. Christo and Dr. Croyle. (R. at 18, 20-22). She afforded only "partial weight" to the assessments supplied by Dr. Grieco and Dr. Tazi. (R. at 21-22). Kofalt's assessment was "noted" and given "little weight." (R. at 22). In support of his motion for summary judgment, Barto argues that the

---

[14] An MRI scan of Barto's cervical spine was performed on October 6, 2011. (R. at 422-423). The results of the scan were submitted to the Appeals Council in support of Barto's request for review. (R. at 4-5, 422-423). Since that evidence was not before the ALJ at the time of her decision, it cannot be considered for the purpose of determining whether that decision is supported by substantial evidence. Chandler v. Commissioner of Social Security, 667 F.3d 356, 360 (3d Cir. 2011); Matthews v. Apfel, 239 F.3d 592-595 (3d Cir. 2001).

ALJ should have credited the opinions provided by Dr. Grieco, Dr. Tazi and Kofalt rather than those provided by Dr. Newman, Dr. Christo and Dr. Croyle. (ECF No. 13 at 6-14).

A residual functional capacity determination is not "supported by substantial evidence" if it is based solely on an administrative law judge's "own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). The extent to which established impairments limit a claimant's ability to perform job-related tasks must be ascertained by reference to competent medical evidence. Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986). An administrative law judge may not mischaracterize evidence or draw "speculative inferences from medical reports" in order to reject credibly established functional limitations. Brownawell v. Commissioner of Social Security, 554 F.3d 352, 357 (3d Cir. 2008); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Contrary to Barto's belief, however, opinions of disability expressed by treating sources do not bind the Commissioner on the issue of a claimant's residual functional capacity. Brown v. Astrue, 649 F.3d 193, 196, n. 1 (3d Cir. 2011). Assessments submitted by examining and non-examining consultants also merit "significant consideration." Chandler v. Commissioner of Social Security, 667 F.3d 356, 361 (3d Cir. 2011). Every medical opinion contained in the record constitutes competent evidence. Williams v. Sullivan, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992). The probative value of each medical opinion must be considered in relation to the evidentiary record as a whole. Miller v. Commissioner of Social Security, 172 F.3d 303, 304 (3d Cir. 1999). Where the evidence is in conflict, the Commissioner remains "free to choose the medical opinion of one doctor over that of another." Diaz v. Commissioner of Social Security, 577 F.3d 500, 505 (3d Cir. 2009).

Dr. Christo and Proch both reported that Barto was physically capable of performing "light" work. (R. at 65, 294). The ALJ went further by restricting Barto to "sedentary" work.

(R. at 18). Neither Dr. Christo nor Proch found Barto's pushing and pulling abilities to be limited. (R. at 65, 294). The ALJ nevertheless limited Barto to jobs requiring only "occasional pushing or pulling with the upper extremities." (R. at 18). By finding physical limitations extending beyond those identified by Dr. Christo and Proch, the ALJ partially credited the assessment submitted by Dr. Grieco. (R. at 21, 409-412). The ALJ "did not merely rubber stamp" the conclusions reached by the examining and non-examining consultants. Chandler, 667 F.3d at 361. She was not required to credit Dr. Grieco's opinion in every respect. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). Indeed, Barto testified that he did not need to elevate his legs even though such an accommodation had been referenced by Dr. Grieco. (R. at 45, 410).

An administrative law judge must give "serious consideration" to a claimant's subjective complaints whenever the record contains objective evidence of an impairment that could reasonably be expected to cause the symptoms described in the claimant's testimony. Mason v. Shalala, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). The requirement of "serious consideration" does not mean that the claimant's subjective complaints must be fully credited. Chandler, 667 F.3d at 363. Barto testified that he could not lift more than five pounds. (R. at 38). Under the Commissioner's regulations, an individual performing the duties of a "sedentary" position may be expected to lift objects weighing up to ten pounds. 20 C.F.R. § 416.967(a). Dr. Grieco, Dr. Christo and Proch all reported that Barto could handle the lifting and carrying requirements of "sedentary" work. (R. at 65, 294, 410). Barto testified that he could not sit for more than thirty minutes without moving around. (R. at 38). This portion of his testimony was supported by Dr. Grieco. (R. at 410). Nonetheless, Dr. Christo's physical examination detected no evidence of a limitation concerning Barto's ability to sit. (R. at 294). As the ALJ observed at the hearing, the

13

documentary record contained no confirmation of a "severe back problem."[15] (R. at 42). Given the lack of objective support for a disabling back impairment, it was permissible for the ALJ to credit Dr. Christo's examination findings over the testimony given by Barto and the assessment submitted by Dr. Grieco. Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). Furthermore, the ALJ properly accounted for the remaining limitations contained in Dr. Christo's examination report by restricting Barto to a range of work requiring the performance of only occasional postural maneuvers. (R. at 18, 293).

These same principles apply to the ALJ's assessment of Barto's mental limitations. After completing his consultative psychological evaluation, Dr. Newman reported that Barto's impairments did not limit his abilities to understand, remember and carry out instructions. (R. at 283). In essence, Dr. Newman believed that Barto could understand, remember and carry out *detailed* instructions as well as short, simple instructions. (R. at 283). Although the ALJ accorded "great weight" to Dr. Newman's examination findings, she "did not merely rubber stamp" his conclusions. (R. at 18, 21); Chandler, 667 F.3d at 361. By limiting Barto to jobs involving only *simple* decision-making, the ALJ partially credited the more restrictive assessments submitted by Dr. Tazi and Kofalt. (R. at 18, 22-23). In addition, the ALJ concluded that Barto could tolerate "relatively few workplace changes" even though Dr. Newman's evaluation had detected no limitation regarding Barto's ability to respond appropriately to changes in a routine work setting. (R. at 18, 283). The "moderate" limitations found by Dr. Newman were reflected in the portion of the residual functional capacity finding excluding jobs involving more than occasional interaction with supervisors, co-workers, and members of the general public. (R. at 18, 283). Dr. Croyle observed that Dr. Newman's opinion was "fairly

---

[15] The burden was on Barto "to provide information about his own medical condition." Bowen v. Yuckert, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

14

consistent with the other evidence" contained in Barto's case file. (R. at 299). In light of the opinions expressed by Dr. Newman and Dr. Croyle, the ALJ was not required to adopt the more restrictive opinions put forth by Dr. Tazi and Kofalt.[16] Brown, 649 F.3d at 196-197.

Barto argues that the ALJ failed to consider the effect that his obesity had on his ability to work. (ECF No. 13 at 16). Since the ALJ identified obesity as one of Barto's "severe" impairments, she was required to consider its impact on his residual functional capacity. Diaz, 577 F.3d at 504-505. The ALJ observed that Barto was obese because he weighed 253 pounds and was only six-feet tall. (R. at 17). She specifically stated that she had considered Barto's weight in reaching her decision. (R. at 17). The ALJ was "not required to supply a comprehensive explanation" for her conclusions relating to Barto's obesity. Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981). The "short paragraph" contained in her decision was sufficient. Id. In his examination report, Dr. Christo specifically noted that Barto was "[o]verweight." (R. at 288). To the extent that Barto's obesity impacted his ability to work, it was accounted for in Dr. Christo's assessment. (R. at 293-294). Barto makes no attempt to demonstrate that his obesity resulted in functional limitations extending beyond those found by the ALJ. (ECF No. 13 at 16). Under these circumstances, the ALJ's failure to discuss Barto's obesity in a more comprehensive manner provides no basis for disturbing her decision. Rutherford v. Barnhart, 399 F.3d 546, 552-553 (3d Cir. 2005).

The ALJ's hypothetical question to Dr. Reed referenced all of the limitations later contained within her assessment of Barto's residual functional capacity. (R. at 18, 57-58). Dr.

---

[16] Barto maintains that Dr. Tazi's opinion is "supported by substantial evidence." (ECF No. 13 at 14). That contention misses the point. When the Commissioner's *factual findings* are "supported by substantial evidence," they are "conclusive" in a subsequent judicial proceeding. 42 U.S.C. § 405(g). The relevant question is not whether "substantial evidence" supports an opinion rendered by a treating source, but rather whether "substantial evidence" supports the Commissioner's findings. The fact that the ALJ *could have* awarded benefits to Barto on the basis of Dr. Tazi's opinion does not mean that she was *required* to do so. Barto cannot impugn the ALJ's decision simply by showing that, on the basis of the existing record, she could have "decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

15

Reed responded to that question by testifying that an individual with those limitations could work as a surveillance system monitor, call-out operator or lens inserter. (R. at 58-59). Since the hypothetical question accurately described Barto's functional limitations, Dr. Reed's testimony satisfied the Commissioner's burden of production at the fifth step of the sequential evaluation process. Johnson v. Commissioner of Social Security, 529 F.3d 198, 205-206 (3d Cir. 2008).

**VI.  CONCLUSION**

The Commissioner's decision denying Barto's application for SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Accordingly, it is respectfully recommended that Barto's motion for summary judgment (ECF No. 12) be denied, that the Commissioner's motion for summary judgment (ECF No. 17) be granted, and that the Commissioner's "final decision" be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. Brightwell v. Lehman, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: 2 April, 2013

cc:    All counsel of record